# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY JONES, | 1:16-cv-01212-GSA-PC |
| Plaintiff, | **SCREENING ORDER** |
| vs. | **ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND** |
| ARNETTE, et al., | **(ECF No. 1.)** |
| Defendants. | **THIRTY-DAY DEADLINE FOR PLAINTIFF TO FILE AMENDED COMPLAINT** |
| | **ORDER FOR CLERK TO SEND PLAINTIFF A CIVIL COMPLAINT FORM** |

**I.  BACKGROUND**

Jeremy Jones ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. On August 16, 2016, Plaintiff filed the Complaint commencing this action. (ECF No. 1.)

On August 31, 2016, Plaintiff consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c), and no other parties have made an appearance. (ECF No. 6.) Therefore, pursuant to Appendix A(k)(4) of the Local Rules of the Eastern District of

1

California, the undersigned shall conduct any and all proceedings in the case until such time as reassignment to a District Judge is required. Local Rule Appendix A(k)(3).

Plaintiff's Complaint is now before the court for screening.

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III. SUMMARY OF COMPLAINT

Plaintiff is presently incarcerated at California State Prison-Los Angeles County in Lancaster, California. The events at issue in the Complaint allegedly occurred at Corcoran State Prison (CSP) in Corcoran, California, when Plaintiff was incarcerated there in the custody

of the California Department of Corrections and Rehabilitation. Plaintiff names as defendants Correctional Officer (C/O) Arnette, C/O Flores, C/O Lopez, C/O Zamora, C/O Vasquez, Sergeant Gonzalez, Lieutenant Keener, and Dr. Kim, who were employed at CSP during the relevant time period.

Plaintiff's allegations follow. Plaintiff suffers from a lower back condition causing chronic nerve irritation in both legs. Plaintiff ambulates using a wheelchair and walker.

On August 11, 2012, when Plaintiff was visiting with his parents at CSP, there was a "pop" and his usual excruciating pain intensified greatly in his back and legs. This was during Plaintiff's first visit with his parents after a 2 1/2 year SHU term. Plaintiff's mother ran to alert the staff. The visit was terminated and medical staff transported Plaintiff to medical via a wheelchair. At medical, Plaintiff was only given his noon medications and told to go back to his cell. Plaintiff asked for a bed and to be seen by a doctor or nurse, but his requests were denied and he was forcefully removed from the clinic, wheeled back to his cell, and nearly dumped on the floor by defendant Flores.

The next day, on Plaintiff's birthday, his parents returned to check on him. Defendant Arnette cut up Plaintiff's I.D. card and threw it out the window of the program office in order to deny Plaintiff access to his visit. Plaintiff's inmate caregiver ran back to retrieve Plaintiff's bedcard so he could attend the visit.

While Plaintiff was waiting, defendants Gonzales, Flores, Arnette, Lopez, and Zamora surrounded Plaintiff and made threats, hurled insults, used profane language, and made fun of Plaintiff's disability, knowing he could not walk. They laughed and told him that if he couldn't walk, he couldn't attend the visit. Another officer had compassion and radioed for Plaintiff's floor staff to retrieve his walker from his cell.

While the caregiver was retrieving his walker, Plaintiff told the officers that he had not kissed his parents' faces in more than 2 1/2 years, and if it took him another 2 1/2 years, he was going to kiss his mother's face. Defendants Lopez and Zamora then told Plaintiff that his bedcard was not valid identification. With defendant Gonzales' support, defendants Lopez and Zamora discriminated against Plaintiff, refusing to allow him to use the basic form of

identification used in the towers, building offices, and program offices when an I.D. card is lost, and until a new I.D. card is made. The officers denied Plaintiff access to his family visit because he couldn't walk, violating the ADA.

Plaintiff was immediately and abruptly moved out of the only building medically equipped for Plaintiff to shower, by defendant Vasquez. The Building 5 tower staff somehow got the move stopped when it was authorized by medical. This was brought to the attention of defendants Keener and Gonzalez and they spoke to defendant Vasquez. Due to Plaintiff's medical emergency in the visiting room, he was discriminated against again and not accommodated, leaving him unable to bathe.

Plaintiff had to endure cancelling his visit, only to be denied treatment in an emergency situation by Dr. Kim, the on-call doctor, leaving him in excruciating pain without further care. Defendants used "Greenwall tactics," discrimination, and other ADA violations. Plaintiff suffered mental anguish not knowing if this was his last opportunity to see his father alive. His father was diagnosed with a brain tumor shortly after he was deprived of seeing his son, lost some eyesight, and was diagnosed with Parkinson's disease, dementia, and Alzheimer's disease. These officers, under the direct supervision of Sergeant Gonzalez, cost Plaintiff his last opportunity to have a meaningful visit with his father before his health deteriorated. Plaintiff is in the mental health program and deals with anguish daily.

Plaintiff requests monetary damages.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386,

393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A. **Americans With Disabilities Act (ADA)**

Plaintiff seeks to bring a claim under the Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132. Title II of the ADA "prohibit[s] discrimination on the basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with

regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell, 303 F.3d at 1052.

Regarding Plaintiff's treatment, or lack of treatment, concerning his medical condition, does not provide a basis upon which to impose liability under the ADA. Burger v. Bloomberg, 418 F.3d 882, 882 (8th Cir. 2005) (medical treatment decisions not a basis for RA or ADA claims); Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1144 (10th Cir. 2005) (medical decisions not ordinarily within scope of ADA or RA); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice.").

Further, Plaintiff may name the appropriate entity or state officials in their official capacities, but he may not name individual prison employees in their personal capacities. Shaughnessy v. Hawaii, No. 09-00569 JMS/BMK, 2010 WL 2573355, at *8 (D.Hawai'i Jun. 24, 2010); Anaya v. Campbell, No. CIV S-07-0029 GEB GGH P, 2009 WL 3763798, at *5-6 (E.D.Cal. Nov. 9, 2009); Roundtree v. Adams, No. 1:01-CV-06502 OWW LJO, 2005 WL 3284405, at *8 (E.D.Cal. Dec. 1, 2005). Individual liability is precluded under the ADA. Shaughnessy, 2010 WL 2573355, at *8; Anaya, 2009 WL 3763798, at *5-6; Roundtree, 2005 WL 3284405, at *5.

Therefore, Plaintiff fails to state a claim under the ADA.

### B. Eighth Amendment Medical Claim

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible

medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Plaintiff's alleges that defendant Dr. Kim refused to give Plaintiff medical treatment in an emergency situation when Plaintiff was suffering from back and leg pain. Plaintiff has demonstrated that he has serious medical needs. However, Plaintiff has not alleged facts from which the court can infer that any of the Defendants were aware of a substantial risk of serious

harm to Plaintiff's health and deliberately and unreasonably disregarded the risk, causing him harm. Plaintiff was taken to medical, evaluated, and given medication before he was discharged. The fact that Plaintiff was not placed in a bed or seen by a doctor or nurse, without more, does not show deliberate indifference. Therefore, Plaintiff fails to state an Eighth Amendment medical claim against any of the Defendants.

### C. Discrimination – Fourteenth Amendment Equal Protection Clause and 42 U.S.C. § 1981

Plaintiff claims that he was discriminated against by defendant Vasquez when Vasquez moved him to another part of the prison which did not have accommodations for Plaintiff to take a shower, and by defendants Lopez and Zamora when they told Plaintiff that his bedcard was not proper identification for Plaintiff to attend a visit with his parents at the prison. Plaintiff claims that his rights under the Fourteenth Amendment and 42 U.S.C. § 1981 were violated.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that Defendants intentionally discriminated against Plaintiff based on his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071,1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Section 1981 states, in relevant part: "All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of

persons and property as is enjoyed by white citizens. . . ." 42 U.S.C. § 1981(a). The United States Supreme Court explained in Domino's Pizza, Inc. v. McDonald, 546 U.S. 470 (2006) that "[a]mong the many statutes that combat racial discrimination, § 1981. . . has a specific function: It protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." Id. at 474. "Any claim brought under § 1981, therefore, must initially identify an impaired contractual relationship under which the plaintiff has rights." Id. at 476 (internal citation omitted). The Ninth Circuit has held that "a prima facie section 1981 case, like a prima facie disparate treatment case under Title VII, requires proof of intentional discrimination." Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30, 694 F.2d 531, 538 (9th Cir. 1982). Thus, a section 1981 plaintiff, like a Title VII plaintiff, must allege facts that plausibly indicate defendant was "motivated by a discriminatory animus." Id.

Plaintiff claims it was discrimination when he was housed in a part of the prison without shower accommodations, and when he was not allowed to attend a family visit because he did not have proper I.D. However, Plaintiff has not alleged any facts demonstrating that he was intentionally discriminated against on the basis of his membership in a protected class, or that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose. Nor has Plaintiff identified an impaired contractual relationship under which Plaintiff has rights, as required under § 1981. Therefore, Plaintiff fails to state a claim for relief for violation of his right to equal protection or his rights under 42 U.S.C. § 1981.

### D. **Harassment and Threats**

Plaintiff alleges that some of the defendants surrounded him, harassed him, and threatened him. Mere verbal harassment or abuse alone is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987); accord Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996). Therefore, Plaintiff does not state a § 1983 claim against any of the Defendants for harassment or threats.

///

### E. Conspiracy -- § 1985

Plaintiff seeks to bring a claim under 42 U.S.C. § 1985. Section 1985 proscribes conspiracies to interfere with an individual's civil rights. To state a cause of action under section 1985(3), plaintiff must allege: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States. Gillespie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980); Giffin v. Breckenridge, 403 U.S. 88, 102-03 (1971). Section 1985 applies only where there is a racial or other class-based discriminatory animus behind the conspirators' actions. Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

In interpreting these standards, the Ninth Circuit has held that a claim under § 1985 must allege specific facts to support the allegation that defendants conspired together. Karim-Panahi, 839 F.2d at 626. A mere allegation of conspiracy without factual specificity is insufficient to state a claim under 42 U.S.C. § 1985. Id.; Sanchez v. City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1991).

Plaintiff does not allege facts to support the allegation that any of the Defendants entered into a conspiracy. Therefore, Plaintiff fails to state a claim for conspiracy for which relief can be granted under § 1985 against any of the Defendants.

### F. Damages for Emotional Distress – Physical Injury Requirement

Plaintiff alleges that he deals with mental anguish daily. Plaintiff is advised that the Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury "need not be significant but must be more than *de minimis*." Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002) ) (back and leg pain and canker sore *de minimis*); see also Pierce v. County of Orange, 526 F.3d 1190, 1211-13 (9th Cir. 2008) (bladder infections and bed sores, which pose significant pain and health risks to paraplegics such as the plaintiff, were not *de minimis*). The physical injury requirement applies only to claims for mental or

emotional injuries and does not bar claims for compensatory, nominal, or punitive damages. Id. at 630. Therefore, Plaintiff is not entitled to monetary damages in this case for emotional distress unless he also shows a physical injury.

### G. Conditions of Confinement

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); Rhodes, 452 U.S. at 346. Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).

To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer, 511 U.S. at 834. "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Johnson,

217 F.3d at 731. Rather, extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Farmer, 511 U.S. at 834; Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson, 217 F.3d at 731. Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Farmer, 511 U.S. at 835; Frost, 152 F.3d at 1128.

The Eighth Amendment guarantees sanitation, Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982), including personal hygiene supplies such as soap and toothpaste. Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996). However, the Constitution only requires a prison to provide a prisoner with "adequate" hygiene, Hoptowit, 682 F.2d at 1246, and "'[T]he circumstances, nature, and duration of a deprivation of [ ] necessities must be considered in determining whether a constitutional violation has occurred,'" Hearns v. Terhune, 413, F.3d 1036, 1042 (9th Cir. 2005) (quoting Johnson, 217 F.3d at 731).

Plaintiff's allegations do not rise to the level of an Eighth Amendment violation. Plaintiff alleges that he was moved to a location at the prison which does not have shower accommodations for him to use, so he is unable to bathe. To state an Eighth Amendment claim, Plaintiff must show he was subject to an extreme deprivation denying the minimal civilized measure of life's necessities, devoid of legitimate penological purpose or contrary to evolving standards of decency. Plaintiff has not done so. Plaintiff has not alleged facts addressing all of his circumstances, such as how long he was housed in that location, why he was taken to that location, and whether he had other ways to wash himself. Therefore, Plaintiff

fails to state a claim for adverse conditions of confinement because he lacked shower accommodations.

**V.      CONCLUSION AND ORDER**

The court finds that Plaintiff's Complaint fails to state any claim upon which relief may be granted under § 1983.  The court will dismiss the Complaint for failure to state a claim and give Plaintiff leave to file an amended complaint addressing the issues described above.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires."  Accordingly, the court will provide Plaintiff an opportunity to file an amended complaint curing the deficiencies identified above.  Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000).  Plaintiff is granted leave to file the First Amended Complaint within thirty days.

The First Amended Complaint must allege facts showing what each named defendant did that led to the deprivation of Plaintiff's constitutional rights.  Fed. R. Civ. P. 8(a); Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights by their actions.  Id. at 676-77 (emphasis added).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims.  George v. Smith, 507 F.3d 605, 607 (no "buckshot" complaints).  Plaintiff is not granted leave to add allegations of events occurring after the date he filed the Complaint, August 16, 2016.

Plaintiff is advised that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F 3d. 896, 907 n.1 (9th Cir. 2012) (*en banc*), and it must be complete in itself without reference to the prior or superceded pleading, Local Rule 220.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

///

Based on the foregoing, it is **HEREBY ORDERED** that:

1. Plaintiff's Complaint is dismissed for failure to state a claim, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Plaintiff is granted leave to file a First Amended Complaint curing the deficiencies identified by the court in this order, within **thirty (30) days** from the date of service of this order;
4. Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:16-cv-01212-GSA-PC; and
5. If Plaintiff fails to file a First Amended Complaint within thirty days, this case shall be dismissed for failure to state a claim.

IT IS SO ORDERED.

Dated: __**August 20, 2017**__  _____**/s/ Gary S. Austin**__
                                    UNITED STATES MAGISTRATE JUDGE