UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY JONES, | 1:16-cv-01212-DAD-GSA-PC |
| Plaintiff, | **ORDER DISMISSING FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND (ECF No. 19.)** |
| vs. | |
| ARNETTE, et al., | |
| Defendants. | **THIRTY-DAY DEADLINE TO FILE SECOND AMENDED COMPLAINT** |

## I. BACKGROUND

Jeremy Jones ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. On August 16, 2016, Plaintiff filed the Complaint commencing this action. (ECF No. 1.) The court screened the Complaint under 28 U.S.C. § 1915A and issued an order on August 21, 2017, dismissing the Complaint for failure to state a claim, with leave to amend. (ECF No. 12.) On January 16, 2018, Plaintiff filed the First Amended Complaint, which is now before the court for screening. (ECF No. 19.)

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are
1

legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III. SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently incarcerated at California State Prison-Los Angeles County in Lancaster, California. The events at issue in the First Amended Complaint allegedly occurred at Corcoran State Prison (CSP) in Corcoran, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation. Plaintiff names as defendants Correctional Officer (C/O) Arnette, C/O Flores, C/O Lopez, C/O Zamora, C/O Vasquez, Sergeant Gonzalez, Lieutenant Keener, and Dr. Kim, who were employed at CSP during the relevant time period.

Plaintiff's allegations follow. Plaintiff suffers from a lower back condition causing chronic nerve irritation in both legs and excruciating pain on a daily basis. Plaintiff ambulates using a wheelchair and walker.

On August 11, 2012, while ambulating with his walker to visit with his parents at CSP, Plaintiff felt and heard a loud "pop" in his lower back, and his pain intensified. Plaintiff's mother ran to alert the staff about Plaintiff's medical emergency. The parental visit was terminated and medical staff transported Plaintiff to medical via a wheelchair. At medical, Plaintiff was given his routine noon medications and told to go back to his cell. The routine noon medications did not constitute treatment for Plaintiff's emergency condition. Plaintiff tried to explain that he had not been seen or evaluated for his back condition, but the on-call doctor, Dr. Kim, denied Plaintiff treatment and forcefully removed him from the clinic in the wheelchair. Plaintiff was taken to his cell where defendant Flores nearly intentionally dumped him on the floor, with no regard to his injuries.

Past treatment for Plaintiff's condition consisted of prescribed medication and shots for the immediate pain, with evaluation, x-rays, and scans to make sure no further damage was done. Instead, Dr. Kim did not inquire into Plaintiff's history and intended to leave Plaintiff in "unnecessary and wanton" pain. Something drastically went wrong, because Plaintiff has been wheelchair bound ever since.

The next day, on Plaintiff's birthday, his parents returned to check on him. Defendant Arnette cut up Plaintiff's I.D. card and threw it out the window of the program office in order to deny Plaintiff access to his visit. Out of discrimination and for no other reason, Plaintiff was not allowed to visit his loved ones because he belonged to a protected class: Americans with disabilities. While Plaintiff's inmate caregiver ran back to retrieve Plaintiff's bedcard so he could attend the visit, Plaintiff was "easy pickens" for the frustrations of the officers because he could not walk and was in a wheelchair. (ECF No. 19 at 23.) Defendants Gonzales, Flores, Arnette, Lopez, and Zamora used the Greenwall tactic of intimidation by surrounding Plaintiff, making threats, hurling insults, using profane language, and making fun of Plaintiff's disability in direct violation of CCR Title 15 1391 and codes of conduct. They laughed and told him that if he couldn't walk, he couldn't attend the visit. Another officer had compassion and radioed to the floor staff to retrieve Plaintiff's walker.

///

While the caregiver was retrieving his walker, Plaintiff told the officers that he had not kissed his parents' faces in more than 2 1/2 years, and if it took him another 2 1/2 hours he was going to kiss his mother's face. Defendants Lopez and Zamora then told Plaintiff that his bedcard was not valid identification. Under defendant Gonzalez' supervision these officers discriminated against Plaintiff, refusing to allow him to use the basic form of identification used by able-bodied inmates when their ID's were missing. The officers denied Plaintiff access to his family visit because he couldn't walk, violating his Fourteenth Amendment rights. The harassment and tortuous treatment continued until Plaintiff was immediately and abruptly moved out by defendant Vasquez of the only building medically equipped for Plaintiff to shower.

Once it was discovered that Plaintiff was improperly housed, they requested that Plaintiff be moved back to Building 5. But defendant Vasquez and Building 5 tower staff stopped the move and banned Plaintiff from his building. This was brought to the attention of defendants Keener and Gonzalez, and Plaintiff was again denied proper accommodations and was unable to bathe for over a month until he was given a special transfer. This was deliberate indifference and cruel and unusual punishment because they were aware that Plaintiff could not bathe himself in his cell. This created a substantial risk of harm to his health and safety.

After this ordeal, Plaintiff's father was diagnosed with a brain tumor, lost eyesight, and was diagnosed with Parkinson's, dementia, and Alzheimer's disease.

These officers, under the direct supervision of Sergeant Gonzalez and Lieutenant Keener, cost Plaintiff his last opportunity to have a meaningful visit with his father before his health deteriorated. Plaintiff is in the mental health program and deals with anguish daily. Plaintiff's deprivation of constitutional rights to this degree constitutes a physical injury. The emotional pain of losing the last chance to see his father alive is definitely more than "de minimus." (ECF No. 19 at 12.) Dr. Kim is "without a doubt" liable for emotional distress, because the lack of treatment contributed to Plaintiff being confined to a wheelchair. (Id. at 12:15.)

Plaintiff requests monetary damages, including punitive damages, and a bench trial.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."

Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A. Court's Prior Screening Order

The court's prior screening order found that Plaintiff failed to state any claims upon which relief may be granted. The court found that Plaintiff failed to state claims under the ADA, Eighth Amendment, Fourteenth Amendment, § 1981, § 1983, and § 1985 in the original Complaint.

Now, in the First Amended Complaint, Plaintiff largely makes the same allegations, with some changes in language and the addition of conclusory allegations which are not sufficient to state a claim. Again, Plaintiff fails to state any claims upon which relief may be granted. The court again sets forth Plaintiff's claims and the reasons Plaintiff fails to state a claim. Plaintiff shall be granted another opportunity to amend the complaint.

### B. Americans With Disabilities Act (ADA)

Plaintiff seeks to bring a claim under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132. Title II of the ADA "prohibit[s] discrimination on the basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Id.

#### 1. Defendants' Liability Under the ADA

Plaintiff names individual prison officials as defendants in the First Amended Complaint. Plaintiff was advised in the court's prior screening order that individual liability is precluded under the ADA and that he may not name individual prison employees in their personal capacities.[1] Therefore, none of the defendants are liable under the ADA in their individual capacities.

---

[1] Plaintiff may name the appropriate entity or state officials in their official capacities, but he may not name individual prison employees in their personal capacities. Shaughnessy v. Hawaii, No. 09-00569

6

Plaintiff may proceed against individual defendants in their official capacities, but only if Plaintiff shows discriminatory intent. See Ferguson v. City of Phoenix, 157 F.3d 668, 674 (9th Cir. 1998). To show discriminatory intent, a plaintiff must establish deliberate indifference by the public entity. Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). Deliberate indifference requires: (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood. Id. at 1139. The first prong is satisfied when the plaintiff identifies a specific, reasonable and necessary accommodation that the entity has failed to provide, and the plaintiff notifies the public entity of the need for accommodation or the need is obvious or required by statute or regulation. Id. The second prong is satisfied by showing that the entity deliberately failed to fulfill its duty to act in response to a request for accommodation. Id. at 1139-40.

Furthermore, when Plaintiff states his allegations in the amended complaint, he must refer to each defendant by name and allege what that individual defendant did to violate his rights. It is not enough to allege that "defendants" or "officers" did something. Each defendant is liable only for what he said or did.

### 2. **Damages Available for ADA Claim**

Plaintiff requests monetary damages, including punitive damages. Punitive damages may not be awarded in suits brought under Title II of the ADA. Barnes v. Gorman, 536 U.S.181, 189 (2002). Therefore, Plaintiff may not proceed against defendants for punitive damages based on violation of the ADA.[2]

///

---

JMS/BMK, 2010 WL 2573355, at *8 (D.Hawai'i Jun. 24, 2010); Anaya v. Campbell, No. CIV S-07-0029 GEB GGH P, 2009 WL 3763798, at *5-6 (E.D.Cal. Nov. 9, 2009); Roundtree v. Adams, No. 1:01-CV-06502 OWW LJO, 2005 WL 3284405, at *8 (E.D.Cal. Dec. 1, 2005). Individual liability is precluded under the ADA. Shaughnessy, 2010 WL 2573355, at *8; Anaya, 2009 WL 3763798, at *5-6; Roundtree, 2005 WL 3284405, at *5.

[2] Injunctive relief is also unavailable in this case. The named Defendants all work at CSP, but Plaintiff is no longer incarcerated at CSP. Absent facts to suggest that Plaintiff will be transferred back to the custody of these Defendants, any requests for injunctive relief as to them appear to be moot. See Preiser v. Newkirk, 422 U.S. 395, 402-03 (1975); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991); see also Andrews v. Cervantes, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007).

As discussed above, monetary damages are not available against defendants in their official capacities under Title II of the ADA absent a showing of discriminatory intent.

### 3. **Dr. Kim**

Plaintiff claims that Dr. Kim discriminated against him under the ADA when Dr. Kim refused to treat Plaintiff for his back condition. This claim fails because Plaintiff's treatment, or lack of treatment, concerning his medical condition does not provide a basis upon which to impose liability under the ADA. Burger v. Bloomberg, 418 F.3d 882, 882 (8th Cir. 2005) (medical treatment decisions not a basis for RA or ADA claims); Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1144 (10th Cir. 2005) (medical decisions not ordinarily within scope of ADA or RA); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice.").

Therefore, Plaintiff fails to state an ADA claim against defendant Dr. Kim.

### 4. **Termination of Parental Visit**

Plaintiff claims that he was excluded from participation in his second parental visit by defendants Gonzalez, Flores, Arnette, Lopez, and Zamora because of his disability. However, the facts presented by Plaintiff are not sufficient to state an ADA claim.

Plaintiff first alleges that defendant Arnette took Plaintiff's I.D. card, cut it up, and threw it out the window in order to stop Plaintiff from attending the parental visit, and did so out of discrimination because of Plaintiff's disability. This does not state a plausible claim because Plaintiff fails to allege facts showing what happened. Under Iqbal, to state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss, 572 F.3d at 969. While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id. Plaintiff has not explained what defendant Arnette said or did that caused Plaintiff to believe he was being discriminated against when defendant Arnette cut up his I.D. card and threw it away. If this has happened more than once to Plaintiff, Plaintiff should explain the circumstances and state why officers

destroyed his I.D. card in the past. It is not necessarily discrimination when someone acts against a disabled person.

Plaintiff also alleges that defendants Gonzalez, Flores, Arnette, Lopez, and Zamora surrounded his wheelchair and made threats, hurled insults, used profane language, and made fun of Plaintiff's disability. These defendants also allegedly told Plaintiff that if he was unable to walk, he couldn't attend the visit. If this has happened more than once, Plaintiff should explain the circumstances and state why he was denied other visits. Plaintiff claims that he was prevented from attending the visit because defendants discriminated against him. However, the facts alleged by Plaintiff do not support this conclusion. Plaintiff claims that defendants prevented him from attending the parental visit because he could not walk. However, under Plaintiff's facts, inability to walk was <u>not</u> the reason Plaintiff was denied his parental visit. Under the facts, Plaintiff was denied the visit because he did not have a proper I.D. card.

Plaintiff also claims that it was discrimination when he was not allowed to use his bedcard as identification, because able-bodied inmates have been allowed to use their bedcards during the time their official I.D. was not available. Plaintiff fails to state a claim because he has not shown what happened, who was allowed to use their bedcard as I.D., and under what circumstances. Plaintiff must allege facts showing that other inmates were allowed to use their bedcards *because* they were able-bodied and not for other reasons. Plaintiff must allege facts showing he was denied the same privilege *because* he was disabled and not for other reasons.

Plaintiff shall be granted another opportunity to amend the complaint to state a cognizable claim. Plaintiff should allege more <u>facts</u>, not conclusions. Plaintiff is advised to tell what happened − what he saw, heard, and personally knew, and what defendants said or did, showing the court how they acted against him and why he knows it was because of his disabilities. It is not enough to state that something was done because Plaintiff is disabled, without giving the facts.

### 5.  **<u>Housing without Handicap Accommodations</u>**

Plaintiff also claims that defendants violated the ADA when they moved him to housing that did not have handicap accessible showers, preventing him from properly bathing for a

month. Again, Plaintiff has not given enough facts for the court to determine whether he states a viable ADA claim. Plaintiff should explain why he was moved from one area to another and explain his circumstances and experiences in the new housing – what equipment was missing from the new housing, why he couldn't properly shower, how if he washed himself (or was able to wash himself) without the accommodations, and whether he was given other accommodations instead. Plaintiff should advise the court whether he had running water, soap, washcloths, towels, or other items in his new cell which he could use for personal hygiene. Plaintiff should explain what he did to notify prison staff that his housing was deficient and what they said and did in response. Plaintiff alleges that he was unable to properly bathe for a month. Plaintiff must explain what that means and whether he suffered any harm as a consequence.

### C. Eighth Amendment Medical Claim

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of

State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Plaintiff alleges that defendant Dr. Kim refused to give Plaintiff medical treatment in an emergency situation when Plaintiff was suffering from back and leg pain. The court finds that Plaintiff has established he had serious medical needs. However, Plaintiff has not alleged facts from which the court can infer that any of the Defendants were aware of a substantial risk of serious harm to Plaintiff's health and deliberately and unreasonably disregarded the risk, causing him harm. Plaintiff was taken to medical and administered his routine noon medication, then discharged and taken to his cell. The fact that Plaintiff was not placed in a bed, evaluated by a doctor or nurse, or given additional treatment before discharge, without more, does not show deliberate indifference. Plaintiff's allegation that he was "nearly intentionally dumped on the floor by defendant Flores, with no regard to his injuries" is also

insufficient to state any claim. Therefore, Plaintiff fails to state an Eighth Amendment medical claim against any of the Defendants.

///

### D. Discrimination – Fourteenth Amendment Equal Protection Clause and 42 U.S.C. § 1981

Plaintiff claims that his rights under the Fourteenth Amendment and 42 U.S.C. § 1981 were violated.

#### 1. Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that Defendants intentionally discriminated against Plaintiff based on his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071,1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff claims it was discrimination under the Fourteenth Amendment when he was housed in a part of the prison without handicap accessible shower accommodations, and when he was not allowed to attend a family visit because he didn't have proper I.D. Plaintiff also claims that he was discriminated against by defendant Vasquez when Vasquez moved him to another part of the prison which did not have accommodations for Plaintiff to take a shower, and by defendants Lopez and Zamora when they told Plaintiff that his bedcard was not proper identification for Plaintiff to attend a visit with his parents at the prison.

Plaintiff is mistaken that he belongs to a "protected class, Americans with disabilities" -- because he cannot walk. "[T]he disabled do not constitute a suspect class" for equal

protection purposes. Does 1–5 v. Chandler, 83 F.3d 1150, 1155 (9th Cir.1996) (citing City of Cleburne, 473 U.S. at 440, 105 S.Ct. 3249). Therefore, Plaintiff has not shown that he was discriminated against because of his membership in a protected class.

Nor has Plaintiff shown that similarly situated individuals were intentionally treated differently. Plaintiff claims that other, able-bodied inmates were allowed to use their bedcards as I.D. However, Plaintiff's conclusory statement is insufficient to state a claim. Plaintiff has not alleged facts showing which inmates were allowed to use their bedcards as I.D, and under what circumstances. To state a claim, Plaintiff must allege facts showing that certain inmates were treated differently *because* they were able-bodied, or that he was not allowed to use his bedcard *because* of his disability, without a rational relationship to a legitimate state purpose. Plaintiff must allege facts explaining what he saw or heard, and how he otherwise knows that other particular inmates were given privileges *because* they are able-bodied. Plaintiff has not alleged facts demonstrating that he was intentionally discriminated against on the basis of his membership in a protected class, or that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose. Therefore, Plaintiff fails to state a claim for violation of equal protection.

The Complaint appears to assert that Defendants infringed on Plaintiff's Fourteenth Amendment rights by directly violating CCR Title 15 1391 and the codes of conduct. However, the violation of state law or state prison protocols is not actionable under § 1983. See Sandin v. Conner, 515 U.S. 472, 484 (1995). To state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (emphasis added; citations omitted). Therefore, Plaintiff fails to state a claim based on defendants' violation of state law or prison protocols. Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367. In this instance, the Court fails to find any cognizable federal claims in the First Amended Complaint. Therefore, Plaintiff's state law claims fail.

## 2. 42 U.S.C.§ 1981

Section 1981 states, in relevant part: "All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . ." 42 U.S.C. § 1981(a). The United States Supreme Court explained in Domino's Pizza, Inc. v. McDonald, 546 U.S. 470 (2006) that "[a]mong the many statutes that combat racial discrimination, § 1981. . . has a specific function: It protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." Id. at 474. "Any claim brought under § 1981, therefore, must initially identify an impaired contractual relationship under which the plaintiff has rights." Id. at 476 (internal citation omitted). The Ninth Circuit has held that "a prima facie section 1981 case, like a prima facie disparate treatment case under Title VII, requires proof of intentional discrimination." Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30, 694 F.2d 531, 538 (9th Cir. 1982). Thus, a section 1981 plaintiff, like a Title VII plaintiff, must allege facts that plausibly indicate defendant was "motivated by a discriminatory animus." Id.

Plaintiff has not identified an impaired contractual relationship under which Plaintiff has rights, as required under § 1981. Therefore, Plaintiff fails to state a claim for relief for violation of his right to equal protection or his rights under 42 U.S.C. § 1981.

### E. Harassment and Threats

Plaintiff alleges that some of the defendants surrounded him, harassed him, and threatened him. Mere verbal harassment or abuse alone is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987); accord Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996). Therefore, Plaintiff does not state a § 1983 claim against any of the Defendants for harassment or threats.

### F. Conspiracy -- § 1985

Plaintiff seeks to bring a claim under 42 U.S.C. § 1985. Section 1985 proscribes conspiracies to interfere with an individual's civil rights. To state a cause of action under

section 1985(3), plaintiff must allege: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States. Gillespie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980); Giffin v. Breckenridge, 403 U.S. 88, 102-03 (1971). Section 1985 applies only where there is a racial or other class-based discriminatory animus behind the conspirators' actions. Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

In interpreting these standards, the Ninth Circuit has held that a claim under § 1985 must allege specific facts to support the allegation that defendants conspired together. Karim-Panahi, 839 F.2d at 626. A mere allegation of conspiracy without factual specificity is insufficient to state a claim under 42 U.S.C. § 1985. Id.; Sanchez v. City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1991).

Plaintiff does not allege facts to support the allegation that any of the Defendants entered into a conspiracy. Therefore, Plaintiff fails to state a claim for conspiracy for which relief can be granted under § 1985 against any of the Defendants.

### G. Damages for Emotional Distress – Physical Injury Requirement

Plaintiff alleges that he deals with mental anguish daily. Plaintiff was advised in the court's prior screening order that the Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury "need not be significant but must be more than *de minimis*." Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002) ) (back and leg pain and canker sore *de minimis*); see also Pierce v. County of Orange, 526 F.3d 1190, 1211-13 (9th Cir. 2008) (bladder infections and bed sores, which pose significant pain and health risks to paraplegics such as the plaintiff, were not *de minimis*). The physical injury requirement applies only to claims for mental or emotional injuries and does not bar claims for compensatory, nominal, or punitive damages. Id. at 630.

In the First Amended Complaint, Plaintiff contends that his emotional distress rises to

15

the level of a physical injury because of its grievous nature, and that his mental injuries are not "de minimus." This argument is unpersuasive. The grievous nature of emotional distress does
///

not cause it to become a physical injury. Under 42 U.S.C. § 1997e(e), Plaintiff is not entitled to monetary damages under § 1983 for emotional distress unless he also shows a physical injury.

### H. Conditions of Confinement

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer, 511 U.S. at 847 and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); Rhodes, 452 U.S. at 346. Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).

To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer, 511 U.S. at 834. "[R]outine discomfort

16

inherent in the prison setting" does not rise to the level of a constitutional violation. Johnson, 217 F.3d at 731. Rather, extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Farmer, 511 U.S. at 834; Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson, 217 F.3d at 731. Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Farmer, 511 U.S. at 835; Frost, 152 F.3d at 1128.

"'[T]he circumstances, nature, and duration of a deprivation of [ ] necessities must be considered in determining whether a constitutional violation has occurred,'" Hearns v. Terhune, 413, F.3d 1036, 1042 (9th Cir. 2005) (quoting Johnson, 217 F.3d at 731).

The Eighth Amendment's reach extends to a prisoner's basic "sanitation." Hoptowit, 682 F.2d at 1246. The right to "sanitation" includes the right to shower. See, e.g., Toussaint, 801 F.2d at 1110–1111. But a prison that limits the number of showers an inmate can take does not necessarily violate an inmate's Eighth Amendment rights unless the number of showers is so limited as to deny the inmate his right to basic sanitation. See, e.g., Williams v. Lehigh Dept. of Corrections, 79 F.Supp.2d 514, 519 (E.D.Pa. 1999) (limiting an inmate's showers was not an Eighth Amendment violation because it had no effect on the inmate's sanitation); Davenport, 844 F.2d at 1316 (holding that inmates experiencing a ninety day lockdown had no right to three showers per week, with Judge Posner noting that, "the importance of the daily shower to the average American is cultural rather than hygienic").

In <u>Serrano</u>, the Ninth Circuit held that a wheelchair-confined inmate invoked a liberty interest after he spent two months in the "Special Housing Unit" that, unlike the general population area of the prison, was not handicap accessible. <u>Serrano</u>, 345 F.3d at 1074. Without the ability to use his wheelchair, Serrano was unable to properly shower, had difficulty using the toilet and getting into bed, could not engage in outdoor exercise, and **"was forced to drag himself around a vermin-and cockroach-infested floor."** <u>Id.</u> (emphasis added)

Plaintiff's allegations do not rise to the level of an Eighth Amendment violation. Plaintiff alleges that he is disabled and was moved to a location at the prison which does not have handicap accessible shower accommodations, so he was unable to properly bathe for a month. Nowhere does Plaintiff allege that as a result of the temporary lack of access to handicap accessible shower accommodations, he was forced to live in a poor state of sanitation.

In the court's prior screening order, Plaintiff was advised that to state an Eighth Amendment claim, he must show he was subject to an extreme deprivation denying the minimal civilized measure of life's necessities, devoid of legitimate penological purpose or contrary to evolving standards of decency. In the prior screening order, the court found that Plaintiff did not allege facts in the Complaint addressing all of his circumstances, including how long he was housed at that location, why he was taken to that location, and whether he had other ways to bathe.

Now, in the First Amended Complaint, Plaintiff alleges that he was without shower accommodations for a month, but he still has not addressed all of his circumstances. Plaintiff has not alleged that he was unable to bathe at all, that he suffered injury because of the shower arrangement, or that he was subject to other adverse conditions during that time. Unlike in <u>Serrano</u>, Plaintiff does not describe other conditions that deprived him of "the minimal civilized measures of life's necessities." <u>Rhodes</u>, 452 U.S. at 347. Therefore, this aspect of Plaintiff's complaint does not rise to the level of a constitutional violation.

## V. CONCLUSION AND RECOMMENDATIONS

The court finds that Plaintiff's First Amended Complaint fails to state any claim upon which relief may be granted under § 1983 or the ADA. The court will dismiss the First

Amended Complaint for failure to state a claim and give Plaintiff leave to file a Second Amended Complaint addressing the issues described above.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." Accordingly, the court will provide Plaintiff an opportunity to file an amended complaint curing the deficiencies identified above. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Plaintiff is granted leave to file the Second Amended Complaint within thirty days.

The Second Amended Complaint must allege facts showing what each named defendant did that led to the deprivation of Plaintiff's constitutional rights. Fed. R. Civ. P. 8(a); Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights by their actions. Id. at 676-77 (emphasis added).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims. George v. Smith, 507 F.3d 605, 607 (no "buckshot" complaints). Plaintiff is not granted leave to add allegations of events occurring after the date he filed the Complaint, August 16, 2016.

Plaintiff is advised that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F 3d. 896, 907 n.1 (9th Cir. 2012) (*en banc*), and it must be complete in itself without reference to the prior or superceded pleading, Local Rule 220. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is **HEREBY ORDERED** that:

1. Plaintiff's First Amended Complaint is dismissed for failure to state a claim, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Plaintiff is granted leave to file a Second Amended Complaint curing the

deficiencies identified by the court in this order, within **thirty (30) days** from the date of service of this order;

4. Plaintiff shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:16-cv-01212-DAD-GSA-PC; and

5. If Plaintiff fails to file a Second Amended Complaint within thirty days, this case shall be dismissed for failure to state a claim.

IT IS SO ORDERED.

Dated: __**February 6, 2018**__    _____**/s/ Gary S. Austin**_____
                                    UNITED STATES MAGISTRATE JUDGE