UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| JEREMY JONES, | 1:16-cv-01212-DAD-GSA-PC |
|---|---|
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE PROCEED WITH (1) PLAINTIFF'S ADA CLAIMS AGAINST DEFENDANTS VASQUEZ, KEENER, GONZALEZ, FLORES, ARNETTE, ZAMORA, AND LOPEZ, IN THEIR OFFICIAL CAPACITIES,(2) PLAINTIFF'S EIGHTH AMENDMENT CONDITIONS OF CONFINEMENT CLAIMS AGAINST DEFENDANTS VASQUEZ, KEENER, AND GONZALEZ, AND (3) PLAINTIFF'S DUE PROCESS CLAIMS AGAINST DEFENDANTS VASQUEZ, KEENER, AND GONZALEZ; AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED FOR FAILURE TO STATE A CLAIM (ECF No. 33.)** |
| vs. | |
| ARNETTE, et al., | |
| Defendants. | |
| | **OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

## I. BACKGROUND

Jeremy Jones ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act

1

(ADA), 42 U.S.C. § 12132. On August 16, 2016, Plaintiff filed the Complaint commencing this action. (ECF No. 1.)

On August 21, 2017, the court screened the Complaint under 28 U.S.C. § 1915A and issued an order dismissing the Complaint for failure to state a claim, with leave to amend. (ECF No. 12.) On January 16, 2018, Plaintiff filed the First Amended Complaint. (ECF No. 19.)

On February 6, 2018, the court screened the First Amended Complaint and issued an order dismissing the First Amended Complaint for failure to state a claim, with leave to amend. (ECF No. 21.) On September 10, 2018, Plaintiff filed the Second Amended Complaint, which is now before the court for screening. (ECF No. 33.)

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal

conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

### III. SUMMARY OF SECOND AMENDED COMPLAINT

Plaintiff is presently incarcerated at California State Prison-Los Angeles County in Lancaster, California. The events at issue in the Second Amended Complaint allegedly occurred at Corcoran State Prison in Corcoran, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation. Plaintiff names as defendants Correctional Officer (C/O) Arnette, C/O Flores, C/O Lopez, C/O Zamora, C/O Vasquez, Sergeant Gonzalez, Lieutenant Keener, and Dr. Kim, who were employed at CSP during the relevant time period.

Plaintiff's allegations follow. Since 2006, Plaintiff has been a member of a protected class of people known as "Americans with Disabilities," which is protected by the Americans with Disabilities Act. ECF No. 33 at 7-8.

After more than two years in the SHU, Plaintiff was able to visit with his parents during his first contact visit that happened to fall on Plaintiff's birthday weekend. However, Plaintiff's serious medical condition began acting up. Plaintiff suffers from a lower back condition which causes chronic nerve irritation in both legs. Plaintiff has excruciating pain on a daily basis and can barely manage his pain with morphine and gabapentin three times a day.

After minutes of ambulating in his walker to visit his parents, Plaintiff felt and heard a loud "pop" in his lower back and his pain intensified so greatly in his back and legs that he burst into tears. Plaintiff's mother ran to alert the staff about Plaintiff's medical emergency. Plaintiff's visit was terminated and medical staff transported him to medical via wheelchair. By the time Plaintiff arrived at medical, it was already noon. Plaintiff was administered his usual noon medications and told to go back to his cell. Plaintiff tried to explain that he had not been seen by a nurse or doctor, but he was denied treatment, forcefully removed from the clinic by the on-call doctor, Dr. Kim, and nearly intentionally dumped from his wheelchair onto the floor of his cell by C/O Flores, with no regard to his injuries. Administering Plaintiff's already-prescribed medications does not constitute treatment. Something other than Plaintiff's usual pain was

wrong, a spinal injury that occurred without explanation and should have been treated to prevent further injury. Dr. Kim was deliberately indifferent to Plaintiff's very serious medical need because he did not look into Plaintiff's history or find out how he was treated in the past. Past treatment consisted of prescribed medications, when it was time, and shots for immediate pain with evaluation including x-rays and scans to make sure no further damage was done. Something drastically went wrong because Plaintiff has been wheelchair-bound since.

The next day, August 12, 2012, Plaintiff's parents returned to check on him. Plaintiff's I.D. was cut up and thrown out the window of the program office by C/O Arnette in order to deny Plaintiff access to his visit. What ensued was blatant discrimination and violation of the Equal Protection Clause. Plaintiff was not allowed his visit for no other reason but his membership in a protected class, Americans with Disabilities. Unable to walk and in a wheelchair, Plaintiff was "easy pickins" for these officers to take out their life frustrations. ECF No. 33 at 10:1.

Plaintiff's caregiver went to retrieve Plaintiff's bed card. Defendants Gonzalez, Flores, Arnette, Lopez, and Zamora implemented the "Green Wall" tactic of intimidation by surrounding Plaintiff, making threats, hurling insults, using profane language, and making fun of his disabilities in violation of CCR Title 15 § 3391 and codes of conduct. ECF No. 33 at 10:4. Knowing that Plaintiff could not walk, the officers laughed and told him that if he couldn't walk then he couldn't attend the visit. The visiting staff saw what was happening and had compassion and radioed to the floor staff to retrieve Plaintiff's walker. When the caregiver returned with the walker Plaintiff told the officers that it had been 2 1/2 years since he kissed his parents' faces, and if it took him 2 1/2 hours he was going to make it to kiss his mother's face. Defendants Lopez and Zamora told Plaintiff that his bed card was not valid identification. But Plaintiff knew that a number of able-bodied inmates have been allowed to use their bed cards when their other IDs were missing. Under direct supervision of Sgt. Gonzalez these officers were allowed to discriminate against Plaintiff.

After more harassment, Plaintiff was moved out of the only building medically equipped for Plaintiff to shower. Plaintiff notified medical that he was improperly housed, and they attempted to accommodate him by moving him back to 5 Block. But defendant Vasquez

somehow stopped the move and banned Plaintiff from his building. Plaintiff notified defendants Lt. Keener and Sgt. Gonzalez, but Plaintiff was again denied proper accommodations and was unable to bathe for over a month. Defendants were made aware that due to his injuries, Plaintiff was unable to bathe himself in his cell. Plaintiff developed skin rashes and jock itch due to the lack of cleanliness. It wasn't until Plaintiff was transferred to a new facility that he was properly housed and was able to properly bathe and clear up these ailments.

Plaintiff's father was diagnosed with a brain tumor, and once the tumor was removed his eyesight was severely compromised. To make matters worse, Plaintiff's father was then diagnosed with Parkinson's disease, dementia, and Alzheimer's disease. The officers under the supervision of Sgt. Gonzalez and Lt. Keener cost Plaintiff his last opportunity to have a meaningful visit with his father before his health deteriorated, all because Plaintiff had a medical emergency and couldn't walk. Plaintiff is in the mental health program at the CCCMS level and deals with this anguish daily. Although damages for emotional distress for inmates require physical injury, the deprivation of Plaintiff's Constitutional rights to this degree is a physical injury that is definitely more than *de minimis*. Dr. Kim is liable for emotional distress because the lack of treatment contributed to Plaintiff being confined to a wheelchair.

Plaintiff requests monetary and punitive damages.

### IV.  PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v.

///

Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A. Americans With Disabilities Act (ADA)

Plaintiff seeks to bring a claim under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132. Title II of the ADA "prohibit[s] discrimination on the basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Id.

### 1. **Defendants' Liability Under the ADA**

Plaintiff names individual prison officials as defendants in the Second Amended Complaint. Individual liability is precluded under the ADA, and Plaintiff may not name individual prison employees in their personal capacities.[1] Therefore, none of the defendants are liable under the ADA in their individual capacities.

However, Plaintiff may proceed against individual defendants in their official capacities, but only if Plaintiff shows discriminatory intent. See Ferguson v. City of Phoenix, 157 F.3d 668, 674 (9th Cir. 1998). To show discriminatory intent, a plaintiff must establish deliberate indifference by the public entity. Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). Deliberate indifference requires: (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood. Id. at 1139. The first prong is satisfied when the plaintiff identifies a specific, reasonable and necessary accommodation that the entity has failed to provide, and the plaintiff notifies the public entity of the need for accommodation or the need is obvious or required by statute or regulation. Id. The second prong is satisfied by showing that the entity deliberately failed to fulfill its duty to act in response to a request for accommodation. Id. at 1139-40.

### 2. **No Punitive Damages Available for ADA Claim**

Plaintiff requests monetary damages, including punitive damages. Punitive damages may not be awarded in suits brought under Title II of the ADA. Barnes v. Gorman, 536 U.S.181, 189 (2002). Therefore, Plaintiff may not proceed against defendants for punitive damages based on violation of the ADA.[2]

---

[1] Plaintiff may name the appropriate entity or state officials in their official capacities, but he may not name individual prison employees in their personal capacities. Shaughnessy v. Hawaii, No. 09-00569 JMS/BMK, 2010 WL 2573355, at *8 (D.Hawai'i Jun. 24, 2010); Anaya v. Campbell, No. CIV S-07-0029 GEB GGH P, 2009 WL 3763798, at *5-6 (E.D.Cal. Nov. 9, 2009); Roundtree v. Adams, No. 1:01-CV-06502 OWW LJO, 2005 WL 3284405, at *8 (E.D.Cal. Dec. 1, 2005). Individual liability is precluded under the ADA. Shaughnessy, 2010 WL 2573355, at *8; Anaya, 2009 WL 3763798, at *5-6; Roundtree, 2005 WL 3284405, at *5.

[2] Injunctive relief is also unavailable in this case. The named Defendants all work at CSP, but Plaintiff is no longer incarcerated at CSP. Absent facts to suggest that Plaintiff will be transferred back to the custody of these Defendants, any requests for injunctive relief as to them appear to be moot. See Preiser v. Newkirk, 422 U.S. 395, 402-03 (1975); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991); see also Andrews v. Cervantes, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007).

### 3. Dr. Kim

Plaintiff claims that Dr. Kim discriminated against him under the ADA when Dr. Kim refused to treat Plaintiff for his painful condition after Plaintiff heard a "pop" in his lower back. This claim fails because Plaintiff's treatment, or lack of treatment, concerning his medical condition does not provide a basis upon which to impose liability under the ADA. Burger v. Bloomberg, 418 F.3d 882, 882 (8th Cir. 2005) (medical treatment decisions not a basis for RA or ADA claims); Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1144 (10th Cir. 2005) (medical decisions not ordinarily within scope of ADA or RA); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice.").

Therefore, Plaintiff fails to state an ADA claim against defendant Dr. Kim.

### 4. Termination of Parental Visit

Plaintiff claims that he was excluded from participation in his second parental visit by defendants Gonzalez, Flores, Arnette, Lopez, and Zamora because of his disability. Plaintiff's allegations are sufficient to state an ADA claim. Plaintiff first alleges that defendant Arnette took Plaintiff's I.D. card, cut it up, and threw it out the window to stop Plaintiff from attending the parental visit, done out of discrimination because of Plaintiff's disability. Plaintiff alleges that defendants Gonzalez, Flores, Arnette, Lopez, and Zamora surrounded his wheelchair and made threats, hurled insults, used profane language, made fun of Plaintiff's disability, and prevented Plaintiff from visiting with his parents.

Here, defendants Gonzalez, Flores, Arnette, Lopez, and Zamora made fun of Plaintiff's disability and created barriers which prevented Plaintiff from attending a visit with his parents. The officers showed discriminatory intent when they made fun of Plaintiff's disability and told him he could not visit with his parents because he could not "walk." These allegations are sufficient to state a claim under the ADA against defendants Gonzalez, Flores, Arnette, Lopez, and Zamora in their official capacities.

### 5. Housing without Accessible Showers

Plaintiff also claims that defendants Vasquez, Keener, and Gonzalez violated the ADA when they moved him to housing that did not have handicap accessible showers, preventing him

from bathing for over a month. Plaintiff alleges that he developed skin rashes and jock itch because he was unable to wash himself. Plaintiff's allegations show that he was moved to housing without shower accommodations, notified prison officials and was denied accommodations, causing him to be unable to bathe himself for more than a month. This is sufficient to state a claim under the ADA against defendants Vasquez, Keener, and Gonzalez in their official capacities.

### B. Eighth Amendment Medical Claim

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the

///

///

facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted).

Plaintiff alleges that defendant Dr. Kim refused to give Plaintiff medical treatment in an emergency situation when Plaintiff was suffering from back and leg pain. The court finds that Plaintiff has established he had serious medical needs. However, Plaintiff has not alleged facts from which the court can infer that Dr. Kim knew that Plaintiff faced an emergency situation and was at substantial risk of serious harm if he were not immediately examined and given medical treatment other than his usual prescribed pain medications. The fact that Plaintiff was not placed in a bed, evaluated by a doctor or nurse, or given additional treatment before discharge, without more, does not show deliberate indifference. At most, Plaintiff states a claim for negligence, which is not actionable under § 1983. Therefore, Plaintiff fails to state a cognizable Eighth Amendment medical claim against Dr. Kim.

**C. Discrimination – Fourteenth Amendment Equal Protection Clause and 42 U.S.C. § 1981**

Plaintiff claims that his rights to equal protection under the Fourteenth Amendment and 42 U.S.C. § 1981 were violated because he was discriminated against.

**1. Equal Protection Clause**

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S.

432, 439, 105 S.Ct. 3249 (1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that Defendants intentionally discriminated against Plaintiff based on his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071,1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff claims that he belongs to a protected class, Americans with disabilities, and therefore he was discriminated against under the Fourteenth Amendment when he was moved to housing without handicap-accessible shower accommodations and when defendants Gonzalez, Flores, Arnette, Lopez, and Zamora prevented him from visiting his family because he could not walk.

Plaintiff is mistaken that he belongs to a protected class because of his disability. "[T]he disabled do not constitute a suspect class" for equal protection purposes. Does 1–5 v. Chandler, 83 F.3d 1150, 1155 (9th Cir.1996) (citing City of Cleburne, 473 U.S. at 440, 105 S.Ct. 3249). Therefore, Plaintiff has not shown that he was discriminated against in violation of equal protection because of his membership in a protected class.

Therefore, Plaintiff cannot state a disability-based equal protection claim.

### 2. **42 U.S.C. § 1981**

Section 1981 states, in relevant part: "All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . ." 42 U.S.C. § 1981(a). The United States Supreme Court explained in Domino's Pizza, Inc. v. McDonald, 546 U.S. 470 (2006) that "[a]mong the many statutes that combat racial discrimination, § 1981. . . has a specific function:

It protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." Id. at 474. "Any claim brought under § 1981, therefore, must initially identify an impaired contractual relationship under which the plaintiff has rights." Id. at 476 (internal citation omitted).

Plaintiff has not identified an impaired contractual relationship under which Plaintiff has rights, as required under § 1981. Therefore, Plaintiff fails to state a claim for relief for violation of his rights under 42 U.S.C. § 1981.

### D. Conspiracy -- § 1985

Plaintiff seeks to bring a claim for conspiracy under 42 U.S.C. § 1985. Section 1985 proscribes conspiracies to interfere with an individual's civil rights. To state a cause of action under § 1985(3), plaintiff must allege: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States. Gillespie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980); Giffin v. Breckenridge, 403 U.S. 88, 102-03 (1971). Section 1985 applies only where there is a racial or other class-based discriminatory animus behind the conspirators' actions. Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

In interpreting these standards, the Ninth Circuit has held that a claim under § 1985 must allege specific facts to support the allegation that defendants conspired together. Karim-Panahi, 839 F.2d at 626. A mere allegation of conspiracy without factual specificity is insufficient to state a claim under 42 U.S.C. § 1985. Id.; Sanchez v. City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1991).

Plaintiff does not allege facts to support an allegation that any of the Defendants entered into a conspiracy. Therefore, Plaintiff fails to state a claim for conspiracy for which relief can be granted under § 1985 against any of the Defendants.

### E. State Law Claims

Plaintiff alleges violations of 15 CCR § 1391 and the prison's codes of conduct. The violation of state law or state prison protocols is not actionable under § 1983. See Sandin v.

Conner, 515 U.S. 472, 484 (1995). To state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (emphasis added; citations omitted). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367.

In this instance, the court has found cognizable federal claims in the Second Amended Complaint. However, Plaintiff has not alleged any facts showing that any of the Defendants violated § 1391, which requires the "facility administrator [to] develop and implement written policies and procedures for the administration of discipline." 15 CCR § 1391.

Further, Plaintiff's claim that Defendants violated the prison's codes of conduct is not cognizable because Plaintiff has not identified a specific code of conduct that was violated, or how it was violated by any of the Defendants. Therefore, the court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

**F.    Physical Injury Requirement**

Plaintiff alleges that he experiences mental anguish daily, and defendant Dr. Kim is liable for Plaintiff's emotional distress. Plaintiff was advised in the court's prior screening order that the Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury "need not be significant but must be more than *de minimis*." Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002) ) (back and leg pain and canker sore *de minimis*); see also Pierce v. County of Orange, 526 F.3d 1190, 1211-13 (9th Cir. 2008) (bladder infections and bed sores, which pose significant pain and health risks to paraplegics such as the plaintiff, were not *de minimis*). The physical injury requirement applies only to claims for mental or emotional injuries and does not bar claims for compensatory, nominal, or punitive damages. Id. at 630.

In the Second Amended Complaint Plaintiff contends that his emotional distress rises to the level of a physical injury because of its grievous nature, and his emotional injuries are not

"de minimus." This argument is unpersuasive. The grievous nature of emotional distress does not cause it to become a physical injury. Under 42 U.S.C. § 1997e(e), Plaintiff is not entitled to monetary damages under § 1983 for emotional distress unless he also shows a physical injury.

### G. Conditions of Confinement -- Eighth Amendment Claim for Denial of Shower Accommodations

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer, 511 U.S. at 847 and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); Rhodes, 452 U.S. at 346. Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).

To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer, 511 U.S. at 834. "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Johnson, 217 F.3d at 731. Rather,

extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Farmer, 511 U.S. at 834; Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992). "'[T]he circumstances, nature, and duration of a deprivation of [ ] necessities must be considered in determining whether a constitutional violation has occurred,'" Hearns v. Terhune, 413, F.3d 1036, 1042 (9th Cir. 2005) (quoting Johnson, 217 F.3d at 731). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837.

The Eighth Amendment's reach extends to a prisoner's basic "sanitation." Hoptowit, 682 F.2d at 1246. The right to "sanitation" includes the right to shower. See, e.g., Toussaint, 801 F.2d at 1110–1111. But a prison that limits the number of showers an inmate can take does not necessarily violate an inmate's Eighth Amendment rights unless the number of showers is so limited as to deny the inmate his right to basic sanitation. See, e.g., Williams v. Lehigh Dept. of Corrections, 79 F.Supp.2d 514, 519 (E.D. Pa. 1999) (limiting an inmate's showers was not an Eighth Amendment violation because it had no effect on the inmate's sanitation); Davenport v. DeRobertis, 844 F.2d 1310, 1316 (9th Cir. 1998) (holding that inmates experiencing a ninety-day lockdown had no right to three showers per week, with Judge Posner noting that, "the importance of the daily shower to the average American is cultural rather than hygienic").

The alleged denial of adequate hygiene over an extended period of time can state an objective serious deprivation for the purposes of the Eighth Amendment in certain circumstances. E.g., Bradley v. Puckett, 157 F.3d 1022, 1026 (5th Cir. 1998) (denial of disabled prisoner proper facilities to shower for over two months stated claim for cruel and unusual punishment); Clayton v. Morris, No. 90 C 2718, 1994 WL 118186, *6 (N.D. Ill. Mar. 28, 1994) ("The denial of shower privileges over a prolonged period may be actionable if the inmate can allege a specific physical harm that results."), aff'd, 70 F.3d 1274 (7th Cir. 1995).

Plaintiff's allegations rise to the level of an Eighth Amendment violation. Plaintiff alleges that he is disabled and was moved to a location at the prison which does not have handicap-accessible shower accommodations, so he was unable to bathe for more than a month.

Plaintiff alleges that he developed skin rashes and jock itch from of lack of cleanliness. Under these allegations, Plaintiff describes conditions that deprived him of the "minimal civilized measures of life's necessities." Rhodes, 452 U.S. at 347. Therefore, Plaintiff states an Eighth Amendment claim against defendants Vasquez, Keener, and Gonzalez.

### H.  Excessive Force -- Eighth Amendment Claim -- Defendant C/O Flores

In the Second Amended Complaint, Plaintiff alleges that he was "forcefully removed from the clinic in the wheelchair and nearly intentionally dumped [] on the floor of his cell by C/O Flores, with no regard to his injuries." ECF No. 33 at 8-9.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks

and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

Plaintiff's allegations are insufficient to state a claim for use of excessive force because Plaintiff was not actually thrown to the floor, and Plaintiff does not allege any injuries caused by C/O Flores' conduct. There are no facts causing an inference that C/O Flores acted maliciously or sadistically against Plaintiff or used force against him of the sort that is repugnant to the conscience of mankind. At most, Plaintiff describes a *de minimus* use of force, which is excluded from constitutional recognition. Therefore, Plaintiff fails to state a cognizable claim against defendant Flores for use of excessive force under the Eighth Amendment.

### I.     Due Process -- Denial of Showers

The Due Process Clause protects against the deprivation of liberty without due process of law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Id. Liberty interests may arise from the Due Process Clause itself or from state law. Id.

Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84, 115 S.Ct. 2293 (1995). Liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

#### 1.     Liberty Interest

An inmate has "a liberty interest under the federal constitution when a change occurs in confinement that imposes an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" Resnick v. Hayes, 213 F.3d 443, 448 (9th Cir. 2000) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

In Serrano, the Ninth Circuit held that a wheelchair-confined inmate invoked a liberty interest after he spent two months in the "Special Housing Unit" that, unlike the general

population area of the prison, was not handicap accessible. Serrano, 345 F.3d at 1078-79. Without the ability to use his wheelchair, Serrano was unable to properly shower, had difficulty using the toilet and getting into bed, could not engage in outdoor exercise, and "was forced to drag himself around a vermin-and cockroach-infested floor." Id. The Ninth Circuit concluded that "it is not [the plaintiff's] administrative segregation alone that potentially implicates a protected liberty interest," but the inmate's "disability—coupled with administrative segregation in an SHU that was not designed for disabled persons—gives rise to a protected liberty interest." Id. at 1079.

In this instance, Plaintiff alleges that he was moved to housing in which the showers were not accessible to Plaintiff because of his disability, and he was unable to bathe for more than one month. Plaintiff alleges that because he could not clean himself he developed skin rashes and jock itch. The court finds that Plaintiff's allegations that he was denied the ability to bathe and suffered medical conditions impose atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life. Accordingly, the court finds that Plaintiff has a liberty interest in bathing more often than once a month.

### 2. **Notice and Hearing**

Because Plaintiff has a liberty interest in proper accommodations for showering, he is constitutionally entitled to all of the process due under the standards set forth in Wolff, 418 U.S. at 539 (1974). See Sandin, 515 U.S. at 482 ("The time has come to return to the due process principles we believe were correctly established and applied in Wolff and Meachum.[3]"). In Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court established the required pre-deprivation due process consists of: (1) written notice of the charges at least 24 hours in advance of the hearing; (2) a written statement indicating upon what evidence the fact finders relied and the reasons for the disciplinary action; (3) the opportunity to call witnesses and present documentary evidence when doing so will not be unduly hazardous to

///

---

[3] Meachum v. Fano, 427 U.S. 215 (1976).

institutional safety or correctional goals; and (4) an impartial fact finder. Wolff, 418 U.S. at 564–71.

Against this background, it is clear that Plaintiff did not receive the minimum due process protections required under Wolff. Therefore, the court finds that Plaintiff states a claim for denial of due process against defendants Vasquez, Keener, and Gonzalez.

## V. CONCLUSION AND RECOMMENDATIONS

The court finds that Plaintiff states cognizable claims in the Second Amended Complaint against defendants Vasquez, Keener, Gonzalez, Flores, Arnette, Zamora, and Lopez under the ADA, in their official capacities; against defendants Vasquez, Keener, and Gonzalez for adverse conditions of confinement under the Eighth Amendment; and against defendants Vasquez, Keener, and Gonzalez for violation of due process. However, the court finds that Plaintiff states no other cognizable claims against any of the Defendants. Plaintiff's remaining claims and defendants should be dismissed from this action for failure to state a claim, without leave to amend.

The court previously granted Plaintiff leave to amend the complaint, with ample guidance by the court, and Plaintiff has now filed three complaints. The court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Accordingly, **IT IS HEREBY RECOMMENDED** that:

1. This case proceed only on (1) Plaintiff's ADA claims against defendants Vasquez, Keener, Gonzalez, Flores, Arnette, Zamora, and Lopez, in their official capacities; (2) Plaintiff's Eighth Amendment conditions of confinement claims against defendants Vasquez, Keener, and Gonzalez; and (3) Plaintiff's due process claims against defendants Vasquez, Keener, and Gonzalez;

2. All other claims and defendants be dismissed from this action for failure to state a claim, without leave to amend;

///

3. Defendant Dr. Kim be dismissed from this action for Plaintiff's failure to state any claims against him;

4. Plaintiff's Eighth Amendment medical claims, conspiracy claims, contract claims under 42 U.S.C. § 1981, excessive force claim, equal protection claim, and state law claims be dismissed for Plaintiff's failure to state a claim upon which relief may be granted; and

5. This case be referred back to the Magistrate Judge for further proceedings, including initiation of service of process.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within fourteen (14) days** from the date of service of these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 9, 2018**        **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE